IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 27, 2009

## STATE OF TENNESSEE v. SCOTTY LEE JOHNSON

**Appeal from the Circuit Court for Blount County
Nos. C-16576, C-16606     Michael H. Meares, Judge**

_____

**No. E2008-01527-CCA-R3-CD - Filed March 5, 2009**

_____

The defendant, Scotty Lee Johnson, appeals from the revocation of his probation. In this appeal, he contends that the trial court erred by ordering incarceration. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Mack Garner, District Public Defender (at trial), for the appellant, Scotty Lee Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; Mike Flynn, District Attorney General; and Robert Headrick, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

On June 29, 2007, the defendant entered a plea of guilty in the Blount County Circuit Court to one count of robbery in case number C-16576 and one count of theft of property valued at $1,000 or more in case number C-16606. Pursuant to a plea agreement with the State, the defendant received consecutive four-year sentences to be served as six months' incarceration followed by probation.

On October 9, 2007, the defendant's probation officer prepared a probation violation report alleging that the defendant had violated the terms of his probation by failing to report, incurring new criminal charges, testing positive for drugs and alcohol, and failing to apprise his probation officer of his current address. The trial court issued a probation violation warrant on that same date. The defendant's probation officer filed an amended probation violation warrant on October 24, 2007, alleging that the defendant left the state without permission, failed to pay probation fees, and failed to pay court costs. On January 4, 2008, the trial court entered an order

finding "that the defendant materially violated the rules of probation and that he has successfully completed treatment at Centerpointe" and ordering "that the defendant be returned forthwith to supervised probation."

On January 18, 2008, the defendant's probation officer filed a new probation violation warrant alleging that the defendant had violated the terms of his probation by failing to report a new arrest. On March 31, 2008, the trial court entered an order finding "that the defendant has materially violated his probationary rules" and ordering "that his probation be revoked with time served. The defendant shall be immediately released from the Blount County Jail and placed back on supervised probation for the balance of his sentence."

Then, on April 30, 2008, a probation violation warrant issued alleging that the defendant had violated the terms of his probation by failing to contact his probation officer upon his release from jail.

At the June 16, 2008 probation revocation hearing, the defendant's probation officer, Terry Fowlkes, testified that the defendant failed to report after being released from the Blount County Jail on March 31, 2008. Ms. Fowlkes stated that she had sent a letter to the defendant's last known address and unsuccessfully attempted to contact him via telephone. She testified that when she eventually spoke with the defendant, he told her "that he was homeless. He asked for treatment." She stated that her "recommendation would be treatment."

During cross-examination, Ms. Fowlkes acknowledged that the defendant suffered from substance abuse and mental health problems. She stated that the defendant told her "he had an addiction to cocaine," and she conceded that "there [are] obviously some mental disabilities." Ms. Fowlkes testified that it was her opinion that the defendant could not successfully complete a probationary sentence "without some assistance, whether it be treatment or . . . some type of mental facility." She stated, "I think he's trying, but due to his capabilities, he's not able to complete probation." She testified that if the court placed the defendant in a treatment facility, she believed "he would try and make a good faith effort."

The 24-year-old defendant testified that he had been using drugs since the age of 17 and that he had developed an addiction to cocaine and morphine. He stated that his drug "problem is so bad that [he] would just . . . do whatever comes to mind." He testified that between the ages of 19 and 22 he worked for his father's roofing business and lived with his parents, with whom he shared responsibility for the household bills. The defendant stated that he had been diagnosed as bipolar and placed on "Depakote, Seroquel, and lithium and Trazodone." The defendant admitted getting in a fight at the jail, but he claimed that he was "attacked by a federal inmate" who was "trying to get into the federal prison as soon as possible and he couldn't get to nobody [sic] else, so he figured if he attacked [the defendant] it would get him there quicker." The defendant stated that he tried "to mind [his] own business" but claimed that "it's like almost . . . impossible." He stated that he had never had a driver's license because he was unable to obtain the necessary documentation.

The defendant testified that when he was released from jail, he "didn't have nowhere [sic] to go." He claimed that his family "pretty much turned [him] down on [his] own doorstep." He testified that he "pretty much gave up," and, upon learning that a violation warrant had been filed based upon his failure to report, began using drugs again. The defendant stated that he telephoned Ms. Fowlkes and told her that he needed help. He stated that he had made arrangements to attend the Salvation Army drug treatment program called "Bootstraps" in Knox County if released on probation again. He testified that his father had agreed to pay for the treatment as well as for his transportation to probation appointments via the East Tennessee Human Resources Agency.

Upon questioning by the trial court, the defendant stated that he had completed a 28-day drug treatment program at Centerpointe but returned to drug use within two months of completing the program. He stated that the Bootstraps program requires 45 days of inpatient treatment followed by residence in a halfway house.

At the conclusion of the hearing, the trial court revoked the defendant's probation on the basis of his failure to report and ordered the defendant to serve the balance of his sentence. The court then issued the following order:

> [T]he [c]ourt further orders that the [d]efendant be evaluated by the Cherokee Mental Health forthwith to determine the status of his psychological problems . . . and his suitability for placement in a halfway house. The [c]ourt further orders that the [d]efendant will remain in the Blount County Jail for a minimum of . . . at least the next 120 days while that mental health evaluation is taking place, and will entertain during that 120 days, if it appears possible, his application for admission to a halfway house, provided the mental health evaluation indicates such is suitable.

On June 17, 2008, the trial court entered a written order revoking the defendant's probation and requiring service of "the sentence as previously ordered." On July 8, 2008, the trial court entered an order rescinding its earlier order requiring the defendant to remain in the Blount County Jail for 120 days on the basis that the "defendant had multiple incidents with other inmates in the jail relating to his personal safety and the disruption of jail security." The court also ordered the defendant "to serve his sentence as previously imposed" and that the defendant "may be transported to another appropriate facility as soon as one becomes available."

A trial court may revoke a sentence of probation upon a finding by a preponderance of the evidence that the defendant has violated the conditions of his release. T.C.A. § 40-35-311(e) (2006); *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). A revocation will be upheld absent a showing that the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. *Id.* (citing *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398

(Tenn. Crim. App. 1980)).  Relief will be granted only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'"  *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).  Upon finding a violation, the trial court may "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." T.C.A. § 40-35-311(e).  Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of the suspension." *Id.* § 40-35-310.  The trial judge retains the discretionary authority to order the defendant to serve the original sentence. *See State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

The defendant candidly admitted violating the terms of his probation and acknowledged that his probation was revoked in this case on more than one occasion.  Although he asked the trial court to place him in a drug treatment program, the trial court was under no duty to do so.  Upon finding that the defendant violated the terms of his probation, the trial court acted within its authority by ordering service of the original sentence in confinement.  T.C.A. §§ 40-35-310, -311(e).

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE